UNITED STATES, Appellee

v

DANNY LEE WELLS, Aviation Structural Mechanic Airman,
U. S. Navy, Appellant

9 USCMA 509, 26 CMR 289

No. 10,925

Decided August 1, 1958

*Commander H. H. Brandenburg,* USN, argued the cause for Appellant, Accused.

*·Major Charles R. Larouche,* USMC, argued the cause for Appellee, United States.

ROBERT E. QUINN, Chief Judge:

Almost half a hundred specifications were laid against the accused. For the most part they allege larceny by check, dishonorable failure to maintain sufficient funds for payment of checks, and dishonorable failure to pay debts. Most of the charges were referred to trial by general court-martial. With some exceptions, the accused was convicted as charged. On appellate review some of the findings of guilty were set aside by the board of review. The board of review also modified the sentence. We granted further review to consider a number of matters raised by the record of trial.

Originally the convening authority referred a considerable number of the specifications to a special court-martial for trial. The special court convened on April 4, 1956. The court members and the trial personnel were sworn, but the trial was adjourned on two occasions because the court was reduced by challenge to less than a quorum. Finally, the court was organized, various motions were interposed and ruled upon, and the accused entered a plea of not guilty. Thereupon, trial counsel claimed surprise and moved for a twelve-day continuance "to prepare his case." Over defense counsel's vigorous contention that "he was ready for trial" and that he objected to the continuance, the motion was granted. On May 1, the court reconvened. Instead of proceeding on the merits, trial counsel read a letter from the convening authority dated April 25, 1956, in which he advised the court that he had withdrawn the charges because of the "receipt of additional charges . . . during the month of April." Despite defense counsel's contention that failure to proceed would result in double jeopardy, the court was adjourned. Four and one-half months later the present charges, which include a number of those earlier referred to the special court, came on for hearing before a general court. Before entering the accused's plea of not guilty to all charges, defense counsel moved to dismiss the charges that had been before the special court on the ground of former jeopardy. The motion was denied. Relying upon a discussion of former jeopardy set out in paragraph 68*d* of the Manual for Courts-Martial, United States, 1951, the board of review upheld the ruling.[1]

The Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." Interpreting the constitutional provision the Federal courts have held that jeopardy normally attaches at one of two times: If the trial is before the judge without a jury, jeopardy attaches when the court begins to hear evidence; if the trial is before a judge and jury, jeopardy attaches when the accused has been arraigned and has pleaded and the jury has been impanelled and sworn. Clawans v Rives, 104 F 2d 240 (CA DC Cir) (1939); McCarthy v Zerbst, 85 F 2d 640 (CA 10th Cir) (1936), cert den 299 US 610, 57 S Ct 313, 81 L ed 450; United States v VanVliet, 23 Fed 35 (ED Mich) (1885). It has been observed, however, that in the latter instance even the swearing of the jury to try the issues is not "invariably determinative." Carrado v United States, 210 F 2d 712 (CA DC Cir) (1953), cert den 350 US 938, 100 L ed 819, 76 S Ct 310.

In military practice the swearing of the trial personnel and the court members is the first real order of business. Appendix 8*a*, Manual for Courts-

---

[1] Manual for Courts-Martial, United States, 1951, paragraph 68*d*, reads in part as follows: "No person shall be tried a second time for the same offense without his consent (Art. 44*a*). No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall, as to such charge or specification, be held to be a trial in the sense of Article 44 until the finding of guilty has become final after review of the case has been fully completed (Art. 44*b*)."

Martial, United States, 1951. Since the challenge proceedings follow the swearing, the court can hardly be said to be "impanelled" on the swearing. Consequently, the time that the court is sworn to try the issues cannot be regarded as the time that jeopardy attaches. A second possible time is the arraignment. That stage of the trial fixes the time when the accused's voluntary absence will not prevent the court from proceeding to verdict and sentence. United States v Houghtailing, 2 USCMA 230, 8 CMR 30. However, at that stage the proceedings are still substantially preliminary. Various motions for appropriate relief can be interposed, and the accused has not yet entered a plea. We are thus left with either the time when the plea is entered or when the court has actually begun to hear evidence. To choose the former would establish in military law a practice different than that in use in the Federal criminal courts. Apparently Congress intended that jeopardy in the courts-martial system would attach upon the hearing of evidence, and thus conform to one of the alternatives of the general rule.

Article 44, Uniform Code of Military Justice, 10 USC § 844, provides as follows:

"(a) No person may, without his consent, be tried a second time for the same offense.

"(b) No proceeding in which an accused has been found guilty by a court-martial upon any charge or specification is a trial in the sense of this article until the finding of guilty has become final after review of the case has been fully completed.

"(c) A proceeding which, after the introduction of evidence but before a finding, is dismissed or terminated by the convening authority or on motion of the prosecution for failure of available evidence or witnesses without any fault of the accused is a trial in the sense of this article."

The pattern of the Article is clear. Although the language of the first subsection is different from that of the Fifth Amendment it embodies the general constitutional prohibition against double jeopardy. The second subsection expresses a qualification of the rule of jeopardy in the case of an appeal from a conviction. United States v Zimmerman, 2 USCMA 12, 6 CMR 12.[2] The final subsection relates to a common situation which contravenes the constitutional prohibition against double jeopardy. Clawans v Rives, supra; Cornero v United States, 48 F 2d 69 (CA 9th Cir) (1931). But not all the qualifications or illustrations of the rule are set out in the Article. For example, the Article is silent on the right of the trial judge to declare a mistrial in the interest of justice, or to withdraw the charges from the jury because of "manifest necessity." Wade v Hunter, 336 US 684, 93 L ed 974, 69 S Ct 754; United States v Stringer, 5 USCMA 122, 17 CMR 122; Manual for Courts-Martial, supra, paragraph 56b and c. However, the fact that Congress singled out for special consideration the withdrawal of charges "after the introduction of evidence" indicates a disposition to regard the time of jeopardy in the miltary as the beginning of the presentation of evidence. As already noted, this approach accords with that of the Federal courts in the case of trial by a judge without a jury. In some respects a court-martial functions as both a judge and a jury, and hence the approach is not inappropriate. Considering this characteristic of the court-martial, and having in mind the chronology of court-martial procedure, we agree with the Government the "earliest point when jeopardy may attach in a court-martial . . . is at the . . . reception of evidence on the general issue." We hold, therefore, that jeopardy did not attach when the charges were withdrawn from the special court-martial. The motion to dismiss the charges on the ground of former jeopardy was properly denied.

[2] It is appropriate to note that reliance by the board of review upon paragraph 68d, Manual for Courts-Martial, United States, 1951, which discusses this subsection, is misplaced. We are not dealing here with the retrial of a case as a result of appellate action. See United States v Zimmerman, supra.

Another of the law officer's rulings challenged by the accused relates to the instructions on the law applicable to the case. The accused maintains he was prejudiced by an instruction given over his objection. As part of his instructions on intent in connection with the larceny specifications, the law officer advised the court-martial as follows:

" . . . Consequently, one who represents that he presently intends to perform a certain act in the future, but who at the time of his representation does not honestly intend to perform the act, makes a false representation of an existing fact—his intention—and thus a false pretense. For example, a person makes such a false pretense by uttering a check made by him if at the time of the utterance he did not honestly intend to have sufficient funds in the bank available to meet payment of the check upon its presentment for payment in due course.

• • • • •

"Intent ordinarily cannot be proved by direct evidence, unless, for example, the accused is overheard to make a statement of his intent. You are advised, however, that intent may be proved by circumstantial evidence. That is, by facts and circumstances from which, alone or in conjunction with other facts, you may, according to the common experience of mankind, reasonably infer the existence of an intent.

"*The court is further advised that when it is shown that as a result of his own acts, a person did not have sufficient funds in the bank available to meet payment upon presentment in due course of a check drawn against the bank by him, it may be presumed that at the time he uttered the check, and thereafter, he did not intend to have sufficient funds in the bank available to meet payment of the check upon its presentment in due course.* However, the court is advised that such a presumption may be rebutted by the evidence." [Emphasis supplied.]

Later in his instructions on the check

offenses under Article 134, the law officer told the court-martial that:

"The court is further instructed that a negligent failure to maintain sufficient funds to cover outstanding checks drawn by the accused would not constitute an offense under the Uniform Code of Military Justice.

• • • • •

"The term 'dishonorably' as used in this specification also imports that the failure of the accused to pay his just debts was characterized by deceit, wilful evasion, bad faith and gross indifference. A mere negligent failure to keep a promise to pay a debt is not an offense punishable under the Uniform Code of Military Justice.

• • • • •

". . . you will note that Specifications 6, 7, 8, and 9 of Charge III allege that the checks were given in payment of debts. If you find that the checks were given for that purpose, that is, in payment for debts, you should find the accused not guilty of the corresponding specification alleging larceny. On the other hand, if you find the accused guilty of larceny, as alleged in any one of Specifications 34, 35, 36 and 37 of Charge II, you may make exceptions and substitutions as to the purpose for which the check was given in your findings concerning the corresponding specification under Charge III, providing that all of the other elements of the offense are found, beyond a reasonable doubt."

The accused challenges the correctness of the underscored part of the instructions set out above on the ground that it destroyed the defense's theory that the checks were issued as a result of "simple negligence and honest mistake."

The meaning and effect of a part of an instruction is determined from a consideration of the part in relation to the whole. Assuming ambiguity in the challenged portion, the other parts of the instruction clearly indicate the court could not find that the "acts" of the accused which resulted in insufficient

funds to pay the checks were simply negligent in nature. .The court-martial was specifically advised that a negligent failure to have funds available "would not constitute an offense under the Uniform Code of Military Justice." The instructions correctly advised the court-martial it must find that "at the time of the utterance . . . [of the checks, the accused] did not honestly intend to have sufficient funds in the bank available to meet payment," and that he intended to deprive the payee of each check permanently of the property obtained from him by means of a check. In our opinion, the instructions as a whole did not mislead or confuse the court-martial in regard to the requirements of proof of larceny by check.

A second attack on the validity of the findings is predicated upon the fact that some of the larceny by ■■■■■■ check specifications were ■■■■■■ also separately alleged as dishonorable check violations. The accused contends the court-martial could not return findings of guilty on each specification. To meet exigencies of proof, the Government can properly plead a single act of misconduct in different forms, and the court-martial may return findings of guilty as to both. United States v Strand, 6 USCMA 297, 20 CMR 13; United States v McCormick, 3 USCMA 361, 12 CMR 117. The law officer here instructed the court-martial that as to these specifications it "should consider for sentence purposes the maximum punishment for the more serious offense." There is, therefore, no error in the proceedings in this regard. See United States v Strand, supra.

Finally, the accused attacks the validity of his sentence. Evidence was presented by the defense to the effect that the accused was "very dependable" and "very efficient" in his work, and that regardless of the outcome of the trial he would be welcomed back to duty. One of the witnesses testified he had made plans to put the accused "back in flight crews as soon as present conditions are taken care of." It also appears from the evidence the accused is 23 years old; he is married; and he has three children. Before trial many of the "bad checks" had been made good. In an unsworn statement the accused said he "certainly learned a lesson" and would "like very much to stay in the Navy." Both counsel also argued the question of an appropriate sentence. Individual defense counsel pleaded for a sentence which would not "completely disrupt his whole life" and which would permit him "to continue to be of value to the Navy." Contrariwise, trial counsel stressed the number of specifications on which the accused was convicted and the rule that in the "military we hold people to a little higher standard of conduct than do civilians."

The law officer instructed the court-martial on the maximum punishment. In the course of his instruction he said: "I would like to invite the court's attention during their deliberations on the sentence to paragraph 76 of the Manual for Courts Martial; and Chapter 25 of the Manual for Courts Martial."

From the instructions it is apparent the court members took a copy of the Manual for Courts-Martial ■■■■■■ with them into their closed session deliberations on the sentence. Since they had specific directions to read paragraph 76, we must assume they did so. Among other things the paragraph refers to paragraph 33(h) which cautions that the "retention in the armed forces of thieves and persons guilty of moral turpitude injuriously reflects upon the good name of the military service and its self-respecting personnel." We have held that such policy statements cannot properly be brought to the attention of the court members in connection with a particular case before them. United States v Starnes, 8 USCMA 427, 24 CMR 237; United States v McGirk, 8 USCMA 429, 24 CMR 239; United States v Rinehart, 8 USCMA 402, 24 CMR 212. Under the circumstances of this case, use of the Manual could reasonably have influenced the court members in their decision to impose a bad-conduct discharge upon the accused. We are constrained, therefore, to set aside the decision of the board of review as to the sentence.

The record of trial is returned to The Judge Advocate General of the Navy for submission to a board of review. In its discretion, the board of review can approve an appropriate sentence which does not include a bad-conduct discharge or it can order a rehearing on the sentence. United States v Fowle, 7 USCMA 349, 22 CMR 139.

FERGUSON, Judge (concurring in part and dissenting in part):

I dissent to that part of the principal opinion which holds that the instructions as a whole were not ▮▮▮▮▮▮ misleading to the court-marital. The law officer instructed in part as follows:

*"The court is further advised that when it is shown that as a result of his own acts, a person did not have sufficient funds in the bank available to meet payment upon presentment in due course of a check drawn against the bank by him, it may be presumed that at the time he uttered the check, and thereafter, he did not intend to have sufficient funds in the bank available to meet payment of the check upon its presentment in due course. However, the court is advised that such a presumption may be rebutted by the evidence.*

. . . . .

"The court is further instructed that a negligent failure to maintain sufficient funds to cover outstanding checks drawn by the accused would not constitute an offense under the Uniform Code of Military Justice." [Emphasis supplied.]

The acts responsible for a shortage of bank funds referred to in the underscored portion of the law officer's instructions could well be negligent acts. In United States v Noe, 7 USCMA 408, 22 CMR 198, we held that if two instructions are in direct conflict and one is clearly prejudicial, the rule of correct instructions as a whole does not apply. In my opinion, this principle of law is applicable to the present case.

It should also be noted that this Court has disapproved of the use of the ambiguous term "presumption" in a law officer's instructions. United States v Ball, 8 USCMA 25, 23 CMR 249.

However, since I concur on the question of double jeopardy and that of incorrect use of the Manual for Courts-Martial, United States, 1951, by the court-martial, I join in the disposition of the case by the principal opinion.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

As to the first two issues discussed by my associates, I concur in the result. However, in relation to the ▮▮▮▮▮▮ use of the Manual for Courts-Martial by the court members, I am of the opinion that such action was not prejudicial to the accused. This case was tried before the period of grace promulgated by United States v Rinehart, 8 USCMA 402, 24 CMR 212, had expired and, therefore, use of the Manual, per se, does not require reversal; United States v Vara, 8 USCMA 651, 25 CMR 155; United States v Turner, 9 USCMA 124, 25 CMR 386 (dissenting opinion). At trial, the accused was convicted of eighteen specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, and of ten specifications in violation of Article 134 of the Code, 10 USC § 934, which occurred during a period of over six months. Under such circumstances, there is no doubt in my mind that the court-martial was uninfluenced by the law officer's mere reference to paragraph 76 of the Manual. In that regard, it might be well to emphasize that the paragraph makes no mention of the retention of thieves in the service and that that policy can only be reached if the court members read the more than dozen paragraphs to which paragraph 76 makes reference.

Therefore, I would affirm the decision of the board of review.