# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
JOHNSON, COOK, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**First Lieutenant RICHARD L. EASTON**
**United States Army, Appellant**

ARMY 20080640

Headquarters, Fort Stewart
Theresa A. Gallagher, Military Judge (arraignment)
James L. Pohl, Military Judge (trial)
Lieutenant Colonel Stacy E. Flippin, Acting Staff Judge Advocate (pretrial)
Colonel Jonathan C. Guden, Staff Judge Advocate (recommendation & addendum)

For Appellant: Colonel Mark Tellitocci, JA; Lieutenant Colonel Matthew M. Miller, JA; Major Timothy W. Thomas, JA; Major Todd Lindquist, JA (on brief).

For Appellee: Colonel Michael E. Mulligan, JA; Major Christopher B. Burgess, JA; Major Mary E. Braisted, JA (on brief).

28 July 2011

----------------------------------
OPINION OF THE COURT
----------------------------------

JOHNSON, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of missing movement, in violation of Article 87, Uniform Code of Military Justice, 10 U.S.C. § 887 [hereinafter UCMJ]. The military judge sentenced appellant to dismissal and confinement for eighteen months. The convening authority reduced the sentence to confinement to ten months and approved the remainder of the sentence.

This case is before the court for review under Article 66, UCMJ. In his brief to this court, appellant assigned the following error:

> THE MILITARY JUDGE ERRED IN RULING THAT APPELLANT'S TRIAL DID NOT VIOLATE HIS CONSTITUTIONAL RIGHT AGAINST DOUBLE JEOPARDY.

EASTON – ARMY 20080640

We have considered the record of trial, appellant's assignment of error, the government's answer, and the matters appellant personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We find the issues raised by appellant to be without merit and that, under the facts of this case, retrial of appellant was not barred.

## BACKGROUND

Appellant was assigned as a physician's assistant with the 3d Infantry Division based at Fort Stewart, Georgia. In February of 2007, the 3d Infantry Division was preparing for a fifteen-month deployment to Iraq in support of the "surge" of forces authorized by the President.[1] In March of 2007, appellant's unit deployed to Iraq in successive flights. The first flight, which consisted of "Main Body I," departed on 18 March 2007. Appellant was ordered to deploy with Main Body I, and through design missed movement. The second flight to Iraq consisted of "Main Body II," which departed on 19 March 2007. Appellant was again ordered to deploy, and through design missed movement with Main Body II.

On 18 April 2007, appellant was charged with two specifications of missing movement in violation of Article 87, UCMJ, and one specification of conduct unbecoming an officer in violation of Article 133, UCMJ. On 24 May 2007, the case

---

[1] On 10 January 2007, the President delivered a speech to the nation describing the need for a surge of forces in Iraq:

> The violence in Iraq — particularly in Baghdad — overwhelmed the political gains the Iraqis had made. Al Qaeda terrorists and Sunni insurgents recognized the mortal danger that Iraq's elections posed for their cause. And they responded with outrageous acts of murder aimed at innocent Iraqis. . . . On September the 11th, 2001, we saw what a refuge for extremists on the other side of the world could bring to the streets of our own cities. For the safety of our people, America must succeed in Iraq. . . . Our past efforts to secure Baghdad failed for two principal reasons: There were not enough Iraqi and American troops to secure neighborhoods that had been cleared of terrorists and insurgents, and there were too many restrictions on the troops we did have. . . . So I've committed more than 20,000 additional American troops to Iraq.

President George W. Bush, Address to the Nation on the State of the War in Iraq (Jan. 10, 2007).

2

was referred to a general court-martial located at Fort Stewart, Georgia [hereinafter "first court-martial"]. Appellant was arraigned in his first court-martial on 12 June 2007, and a motions hearing was held on 29 June 2007. On 16 July 2007, the panel for the first court-martial was sworn and assembled. The parties conducted voir dire, the military judge ruled on challenges, and the court recessed shortly thereafter the same day. No evidence was introduced, and no opening statements were given. On 18 July 2007, the convening authority withdrew and dismissed the charges from the first court-martial.

On 26 March 2008, appellant was again charged with the same two specifications of missing movement in violation of Article 87, UCMJ. In addition, appellant was charged with disobeying a lawful order and adultery, in violation of Articles 90 and 134, UCMJ, respectively. On 9 May 2008, these charges were referred to a general court-martial located at Fort Stewart, Georgia [hereinafter "second court-martial"]. Appellant was arraigned in the second court-martial on 20 May 2008. On 8 July 2008, appellant requested trial by military judge alone, and made several motions, including motions for dismissal due to double jeopardy and due to an improper withdrawal of charges from the first court-martial. The military judge denied both motions, and trial proceeded on the merits. The military judge found appellant guilty of both missing movement specifications under Article 87, UCMJ, the same specifications as those referred to, and withdrawn from, the first court-martial. As for the other charges, the military judge dismissed the adultery charge under Article 134, UCMJ, and found appellant not guilty of disobeying a lawful order under Article 90, UCMJ.

In his decision to deny appellant's motion to dismiss based upon an improper withdrawal, the military judge made the following findings of fact:

> On 16 July 2007, the court was assembled in the original case in these proceedings. At the time, two witnesses with firsthand knowledge, Lieutenant Colonel [(LTC) O.] and Major [(MAJ) E.], both were stationed in Iraq. [LTC O.] was unavailable because he was involved in the operational planning and execution of an offensive mission by the division that lasted from June until September. [MAJ E.'s] position in Iraq was as a [p]hysician's [a]ssistant, which required her continual presence there to provide care for [s]oldiers who may have been injured even if she was not involved in the particular planning process. As such, the judge at the time, and under reasonable conditions, found both witnesses unavailable. As a result, the judge ordered depositions of both witnesses. Immediately prior to the trial after the depositions, it was discovered that the depositions

somehow did not make it back from Iraq.[2] As such, on 16 July, after empanelling the members, two witnesses' testimony were unavailable to the government. The unavailability was based on the operational need for them to be in Iraq, an operational need that was not totally foreseeable at the time of deployment or the time of preferral, and also the failure of the mechanics of logistics of getting the depositions back to Fort Stewart. Two days later, the convening authority withdrew and dismissed without prejudice the charges against the accused.

Based on these findings, the military judge concluded that the convening authority did not withdraw the charges from the first court-martial for an improper reason, and, therefore, referral of those charges to the second court-martial was not barred.

In his decision to deny appellant's motion for dismissal due to the attachment of jeopardy in the first court-martial, the military judge made the following findings of fact:

[O]n 16 July 2007, a panel was brought into the courtroom [in appellant's first court-martial], sworn and assembled. . . . Two days later, the charges were withdrawn and dismissed by the convening authority as reflected in Appellate Exhibit IV. The court finds . . . that no evidence was presented, [and] that no opening statements were made . . . .

Based on these findings, the military judge concluded that double jeopardy did not bar appellant's second court-martial:

[U]nder the clear reading of Article 44(c)[, UCMJ], there's no distinction of whether it's a members case or a judge alone case. Under [Article] 44(c)[, UCMJ], the jeopardy attaches with the introduction of evidence. There was no such introduction of evidence in this case at any time prior to dismissal/withdrawal by the convening authority, and, therefore, the court finds that jeopardy did not attach . . . .

---

[2] It appears from the record that the video-taped depositions physically returned from Iraq but displayed no image and were inaudible.

## LAW

The Fifth Amendment to the United States Constitution commands that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V, cl. 2. The primary purpose of the Double Jeopardy Clause is to "protect the integrity of a final judgment." *United States v. Scott*, 437 U.S. 82, 92 (1978) (citing *Crist v. Bretz*, 437 U.S. 28, 33 (1978)). A separate but related purpose of the Double Jeopardy Clause is to protect against multiple prosecutions "even where no final determination of guilt or innocence has been made." *Scott*, 437 U.S. at 92. It is this latter interest that is implicated in the present appeal.

The Double Jeopardy Clause represents a "constitutional policy of finality for the defendant's benefit." *United States v. Jorn*, 400 U.S. 470, 479 (1971) (plurality opinion). "The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88 (1957).

Under the Double Jeopardy Clause, "once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). In the military justice system, protections against former jeopardy are provided through operation of Article 44, UCMJ. *Burtt v. Schick*, 23 M.J. 140, 142 (C.M.A. 1986).

In civilian jurisdictions, where the defendant is tried by a jury, "jeopardy attaches when a jury is empaneled and sworn," *Serfass v. United States*, 420 U.S. 377, 388 (1975) (citing *Downum v. United States*, 372 U.S. 734 (1963), and *Illinois v. Somerville*, 410 U.S. 458 (1973)). *Crist*, 437 U.S. at 38. In the military, Article 44(c), UCMJ, views the "introduction of evidence" as the critical event for double jeopardy purposes.[3]

---

[3] Article 44(c) provides: "A proceeding which, **after the introduction of evidence** but before a finding, is dismissed or terminated by the convening authority or on motion of the prosecution for failure of available evidence or witnesses without any fault of the accused is a trial in the sense of this article." Article 44(c), UCMJ (emphasis added).

Once jeopardy attaches, it must then "terminate" before double-jeopardy protections will bar subsequent proceedings. *Richardson v. United States*, 468 U.S. 317, 325 (1984). Jeopardy can terminate in a variety of circumstances, including by acquittal, *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977); *United States v. Walters*, 58 M.J. 391, 397 (C.A.A.F. 2003), by discharge of the jury in the absence of "manifest necessity," *Arizona v. Washington*, 434 U.S. 497, 505 (1978); *Wade v. Hunter*, 336 U.S. 684, 689–90 (1949) (holding that a convening authority, like a court, possesses "the authority to discharge a jury from giving a verdict, whenever . . . there is a manifest necessity for the act" (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824))), and by dismissal of the charges in the absence of "manifest necessity," *Scott*, 437 U.S. at 92. In circumstances where jeopardy does not "terminate," the initial jeopardy is thought to continue into, but not preclude, the subsequent proceeding. *Yaeger v. United States*, 129 S.Ct. 2360, 2366 (2009) (holding that "a jury's inability to reach a decision is the kind of 'manifest necessity' that permits the declaration of a mistrial and the continuation of the initial jeopardy that commenced when the jury was first impaneled"). *See Kepner v. United States*, 195 U.S. 100, 134 (1904) (Holmes, J., dissenting) ("[L]ogically and rationally a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried. The jeopardy is one continuing jeopardy, from its beginning to the end of the cause.").

## DISCUSSION

Appellant claims that his second court-martial was barred by the Double Jeopardy Clause. Specifically, appellant contends that once the panel in his first court-martial was sworn and assembled, jeopardy attached, and the government was foreclosed from trying appellant at his second court-martial. Appellant further argues that Article 44(c), UCMJ, is unconstitutional as applied to him because it assigns a later stage for attachment of jeopardy in a court-martial than does the Double Jeopardy Clause in a civilian trial.[4]

Neither this court nor our superior court has resolved the apparent conflict between the attachment of jeopardy under the Double Jeopardy Clause and the attachment of jeopardy under Article 44, UCMJ.[5] The government assumes without

---

[4] Appellant cannot claim former jeopardy protections under the UCMJ, because appellant's first court-martial, which ended prior to the introduction of evidence, is not a "trial" as defined by Article 44(c), UCMJ. Consequently, the first court-martial is not entitled to preclusive effect under the code.

[5] This inconsistency was recognized by our superior court in *United States v. Cook*, where the court stated, "[T]he definition of trial in Article 44(c) . . . does not

(continued . . .)

6

conceding that jeopardy attached to appellant's first court-martial, but argues that withdrawal and dismissal of the charges were warranted by manifest necessity.[6] Thus, at its core, the government's position is that we need not reach the constitutionality of Article 44(c), UCMJ, because jeopardy did not terminate in appellant's first court-martial.

According to the plain meaning of Article 44, UCMJ, jeopardy did not attach to appellant's first court-martial. However, we need not, and therefore should not,[7]

---

(. . . continued)

conform precisely to the Supreme Court's decisions that jeopardy attaches in a jury trial when the jury is sworn, even though no evidence has been presented." *United States v. Cook*, 12 M.J. 448, 452–53 (C.M.A. 1982) (citing James H. Weise, *Double Jeopardy: Changes by the Supreme Court and their Effect on the Military*, 11 The Advocate 28, 29–31 (Jan.-Feb. 1979) (concluding that "[a]n analysis of the treatment of the double jeopardy clause by the military appellate tribunals indicates that the military rule [for attachment of jeopardy] may no longer be tenable in light of *Crist v. Bretz*," and discussing *United States v. Wells*, 9 U.S.C.M.A. 509, 512, 26 C.M.R. 289, 292 (1958) (applying the plain language of Article 44(c), UCMJ, due to the absence of binding federal authority to the contrary))).

[6] Two of our recent cases, *United States v. McClain*, 65 M.J. 894 (Army Ct. Crim. App. 2008), and *United States v. Ragard*, 56 M.J. 852 (Army Ct. Crim. App. 2002), quote the Fifth Amendment standard for attachment of jeopardy; however, neither case involved trial by a court-martial panel. In *McClain*, the appellant elected to be tried by a military judge at his first court-martial, and evidence on the merits was admitted. *McClain*, 65 M.J. at 895–96. Therefore, *McClain* involved a different forum, and it did not require determination of whether jeopardy attached prior to introduction of evidence. In *Ragard*, the appellant claimed double-jeopardy protection based upon a civilian criminal-court proceeding in which a jury was not yet empaneled. *Ragard*, 56 M.J. at 853–54. Thus, *Ragard*, in addition to not involving a court-martial panel, did not even implicate the attachment of jeopardy under the Double Jeopardy Clause. Furthermore, neither *McClain* nor *Ragard* discussed the conflict between the Double Jeopardy Clause and Article 44, UCMJ. Therefore, we will not assign to them any precedence on this issue. To the extent the language in these opinions purports to apply Fifth Amendment jurisprudence for determining the stage at which jeopardy attaches in a court-martial composed of panel members, it is dicta.

[7] "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of

(continued . . .)

decide whether Article 44, UCMJ is unconstitutional in this case. Even if jeopardy attached in appellant's first court-martial it did not terminate.

In general, jeopardy will terminate, and therefore preclude a subsequent court-martial, where charges are dismissed. But where a manifest necessity exists to dismiss charges, then jeopardy does not terminate. *Wade*, 336 U.S. at 689–90.[8] *See Burtt*, 23 M.J. at 142. *Cf.* R.C.M. 915(a). In that case, an accused's valued right "to have his trial completed by the particular tribunal summoned to sit in judgment on him," *Downum*, 372 U.S. at 736, must give way to the government's "very vital interest in enforcement of criminal laws," *Jorn*, 400 U.S. at 479. *Scott*, 437 U.S. at 92. Thus, "manifest necessity" refers to the magnitude of the circumstances that justify discontinuing a trial without terminating jeopardy. *Washington*, 434 U.S. at 505–06. The term "manifest necessity" does not equate to an irresistible compulsion, but instead means there is a "high degree" of need for the action taken. *Id.*

In this case, the termination of jeopardy turns on whether there existed a manifest necessity for the convening authority's decision to withdraw and dismiss the charges from appellant's first court-martial. The convening authority's power to

---

(. . . continued)

constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944). *E.g.*, *Lyng v. Nw. Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). Chief Justice Roberts famously phrased this principle of judicial restraint as, "if it is not necessary to decide more, it is necessary not to decide more." *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, Circuit Judge, concurring).

[8] It is important to note that although *Wade v. Hunter*, 336 U.S. 684 (1949) was decided under the Articles of War, the drafters of the UCMJ thoroughly considered the *Wade* decision and intended to preserve the doctrine of "manifest" or, as it was called, "imperious" necessity in Article 44, UCMJ. *Uniform Code of Military Justice: Hearings on S. 857 and H.R. 4080 Before a Subcomm. of the S. Comm. on Armed Servs.*, 81st Cong. 169–70, 185–86, 241–45, 323–25 (1949). The same cannot be said for decisional law holding jeopardy attaches when a jury is empaneled. *See*, *e.g.*, *Crist*, 437 U.S. at 38 (noting that in *Downum v. United States*, 372 U.S. 734 (1963) the Supreme Court first pinpointed the time of empanelment as "the stage in a jury trial when jeopardy attaches"). Furthermore, Congress has not changed the language of Article 44(c), UCMJ, since its adoption. *See also* Rule for Courts-Martial [hereinafter R.C.M.] 907(b) analysis at A21-57 (discussing why the *Crist* decision was not incorporated into the *Manual for Courts-Martial, United States* (1990 ed.)).

withdraw and subsequently re-refer charges to a court-martial is governed by R.C.M. 604, which was promulgated by the President pursuant to Article 36, UCMJ. It states, in part, "Charges which have been withdrawn from a court-martial may be referred to another court-martial unless the withdrawal was for an improper reason." R.C.M. 604(b). An improper reason for withdrawal includes "an intent to interfere with the free exercise by the accused of constitutional or codal rights, or with the impartiality of a court-martial." R.C.M. 604(b) discussion. *See*, *e.g.*, *Vanover v. Clark*, 27 M.J. 345, 347–48 (C.M.A. 1988); Article 37, UCMJ. Although compliance with R.C.M. 604 does not per se establish the existence of manifest necessity, *see Wade*, 336 U.S. at 691 (rejecting application of a "rigid formula" in favor of a flexible standard applicable under "widely different circumstances"),[9] it is nonetheless an important analytical starting point.

Here, the convening authority acted within his regulatory authority when he referred to appellant's second court-martial the charges he withdrew from the first court-martial. Despite the good-faith efforts of the trial counsel, two of the government's key witnesses were unable to return from a combat theater, and the depositions secured due to their unavailability were useless. "[A] criminal trial is, even in the best of circumstances, a complicated affair to manage." *Jorn*, 400 U.S. at 479. Nowhere is this more true than in the military justice system. Not only must the most basic considerations be taken into account, for example, the health and safety of the various witnesses, parties, and members, but military exigencies must also be weighed, for witnesses may be required to deploy to, or remain in, combat. In light of these complexities, and taking into account the circumstances of this case,

---

[9] We express no opinion about whether an "urgent and unforeseen military necessity" as required in R.C.M. 604(b) is synonymous with "manifest necessity" for double jeopardy purposes. *Compare Manual for Courts-Martial*, *United States* (1951 ed.), Chapter XII, para. 68d. (providing "a proceeding is not a trial in the sense of Article 44 if, because of manifest necessity in the interests of justice, it was terminated"), *and Manual for Courts-Martial*, *United States* (1968 ed.), Chapter XXIX, para. 215b. (amended to provide "a proceeding is not a trial in the sense of Article 44 if, because of urgent military necessity or other good cause in the interest of justice, it was terminated"), *with* R.C.M. 604(b) analysis at A21-32 (stating that the rule's language was based on *Wade v. Hunter*, 336 U.S. 684 (1949) (citing *United States v. Perez*, 22 U.S. 579 (1824)), *and Perez*, 22 U.S. at 580 (holding that the authority to discharge a jury "ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes")). The rule-based requirement for an urgent and unforeseen military necessity is only triggered "after the introduction of evidence on the general issue of guilt." R.C.M. 604(b). In this case, no evidence was introduced at appellant's first court-martial.

we conclude that the convening authority's decision to withdraw and dismiss the charges from appellant's first court-martial was done for a proper reason.[10]

Furthermore, this case demonstrates a manifest necessity for the convening authority's actions. Appellant's unit was ordered to Iraq as part of a surge of forces designed to quell the deadly violence in that country. Appellant's crime was for intentionally missing movement to Iraq for this operation. As appellant's case neared trial, it became clear that operational requirements would prevent the return of some members of appellant's unit that possessed knowledge about the circumstances of the case. Thus, due to the very nature of appellant's crime and the ongoing operations in Iraq, two witnesses were unavailable for trial. The government still made efforts to prosecute appellant's first court-martial and secured depositions of the unavailable witnesses, but the depositions were inoperable.

The Supreme Court has long acknowledged that determining whether manifest necessity exists must be made on a case-by-case basis. *E.g.*, *Downum*, 372 U.S. at 737; *Perez*, 22 U.S. at 580. The seminal case to address manifest necessity in the military is *Wade v. Hunter*. The *Wade* Court said that the issue of "[w]hen justice requires that a particular trial be discontinued is a question that should be decided by persons conversant with factors relevant to the determination." *Wade*, 336 U.S. at 689. In that case, the Court held that the convening authority's decision to withdraw charges due to a tactical situation did not result in the termination of jeopardy:

> This case presents extraordinary reasons why the judgment
> of the Commanding General should be accepted by the
> courts. At least, in the absence of charges of bad faith on
> the part of the Commanding General, courts should not
> attempt to review his on-the-spot decision that the tactical
> situation required transfer of the charges.

*Wade*, 336 U.S. at 692.

Appellant's case is both similar to, and distinct from, *Wade*. Unlike *Wade*, some of the circumstances that combined to disrupt appellant's first court-martial were within the prosecution's control. In that regard, the trial counsel's inability to actually secure depositions of the unavailable witnesses directly implicates policies underpinning double-jeopardy protections in general. *See Jorn*, 400 U.S. at 486.

---

[10] We also conclude that the military judge's findings on the motion to dismiss for an improper withdrawal are not clearly erroneous. Furthermore, we adopt those findings, as well as the military judge's findings on the motion regarding double jeopardy itself, as our own in ruling upon appellant's claim to this court that double jeopardy barred his second court-martial.

However, the trial counsel's failure to secure the depositions is not dispositive in this case. Because what was explicit in *Wade* is implicit here — operational considerations drove the convening authority's decision to terminate appellant's first court-martial. Moreover, there is no evidence that the convening authority acted in bad faith when he made an informed decision to withdraw the charges from that court-martial.[11]

The convening authority's broad discretion must temper our analysis in this case. No evidence had been introduced at appellant's first court-martial, and appellant's unit, which included the witnesses against him, was engaged in combat in Iraq. Instead of pursuing withdrawal of these witnesses from Iraq, the convening authority withdrew the charges from the court-martial. Absent evidence of bad faith, we will not second-guess the convening authority's tactical decision to withdraw charges here, especially when buttressed by the record of trial and the military judge's thorough findings of fact.

## CONCLUSION

According to the plain meaning of Article 44, UCMJ, jeopardy did not attach to appellant's first court-martial. Furthermore, even if jeopardy attached, under the facts of this case and in light of the principles of manifest necessity, the convening authority was well within his power to withdraw, dismiss, and re-refer to a new court-martial the charges against appellant.

On consideration of the entire record, the assigned error, and the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), we find appellant's arguments to be without merit. We hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

---

[11] To be sure, the drafters of the UCMJ were concerned with a convening authority's power to withdraw charges mid-trial based on his or her assessment of the strength of the government's case. *Uniform Code of Military Justice: Hearings on S. 857 and H.R. 4080 Before a Subcomm. of the S. Comm. on Armed Servs.*, 81st Cong. 323–25 (1949). This concern is also reflected in R.C.M. 604(b), where the convening authority's discretion to re-refer charges is narrowly prescribed after the introduction of evidence. Although neither the foregoing limitation in R.C.M. 604(b) nor Article 44(c), UCMJ applies in this case, it is nonetheless important to note that the concerns underlying these limitations are not present here.

EASTON – ARMY 20080640

Judges COOK and BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

12