# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, JUETTEN, and MURDOUGH
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist MATTHEW W. MARTIN**
**United States Army, Appellant**

ARMY 20250030

Headquarters, Fort Campbell
John R. Maloney, Military Judge (arraignment)
Frederic P. Gallun, Military Judge (motions and trial)
Lieutenant Colonel John C. Olson Jr., Special Trial Counsel

For Appellant: Colonel Frank E. Kostik, Jr., JA; Lieutenant Colonel Kyle C. Sprague, JA; Major Kelsey Mowatt-Larssen, JA; Captain Eli M. Creighton, JA (on brief and on brief in response to specified issue).

For Appellee: Colonel Richard E. Gorini, JA; Major Stephen L. Harmel, JA; Major Elizabeth F. Vieyra, JA (on brief); Colonel Richard E. Gorini, JA; Major Stephen L. Harmel, JA (on brief in response to specified issue).

4 May 2026

-------------------------------
MEMORANDUM OPINION
-------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

JUETTEN, Judge:

This case presents us with an issue of first impression: what is the significance of a military judge not impaneling the correct members under Rule for Courts-Martial, *Manual for Courts-Martial, United States* (2024 ed.) [R.C.M.] 912A, according to the random numbers assigned pursuant to R.C.M. 911(a)?

An enlisted panel, sitting as a general court-martial, convicted appellant, contrary to his pleas, of a single specification of domestic violence in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b [UCMJ]. The panel sentenced appellant to a bad-conduct discharge, to perform hard labor without confinement for three months, to be reprimanded, and to be reduced to the grade of E-1.

The panel that tried, convicted, and sentenced appellant consisted of eight members.[1] The eighth impaneled member, Sergeant First Class (SFC) ███, had a higher random number than SFC ██, who was present at assembly of the court, was not excused, and yet nonetheless did not sit as a member of appellant's court-martial, while SFC ███ did.

Because of this discrepancy, we specified two questions to the parties: first, whether SFC ███ was properly impaneled or was he an interloper in the place of SFC ██, and second, if SFC ███ was an interloper, did the trial court have jurisdiction over appellant's case. For the reasons set forth below, we find administrative error but no prejudice, that the trial court had jurisdiction, and we affirm the findings of guilt and corresponding sentence.[2]

## BACKGROUND

The convening order that convened appellant's court-martial detailed a total of 110 members. Prior to assembly, at arraignment, the military judge used a random number generator to assign numbers to all 110 members (a process colloquially referred to as "randomization").[3] The military judge directed the first fourteen members who had not been previously excused by the convening authority,[4] i.e., the fourteen members with the lowest randomly assigned number, to be present at the initial session for which members were required.[5]

---

[1] *See* UCMJ art. 29(b)(2)(B) (directing the military judge to impanel eight members for a non-capital general court-martial).

[2] Though we lack the authority to correct it, we note that Block 32 of the Statement of Trial Results, whether "the accused [has] been convicted of a misdemeanor crime of domestic violence" is incorrectly marked "Yes" and should instead be marked "No." *See United States v. Williams*, 85 M.J. 121 (C.A.A.F. 2024).

[3] *See* R.C.M. 911(a).

[4] Numerous detailed members were excused prior to assembly of the court. *See generally* R.C.M. 505(c)(1) (permitting a convening authority or designee to excuse members prior to assembly without showing cause). These excusals were not challenged by appellant.

[5] *See* R.C.M. 911(b) ("The military judge shall determine, after accounting for any excusals by the convening authority or designee, how many members detailed by the convening authority must be present at the initial session for which members are required.").

2

At initial assembly of the court, the first fourteen members were seated according to their ranks, beginning with the highest ranked member in the center of the front row (the row closest to the well of the courtroom).[6] The figure below shows each member's respective rank,[7] initials, and the number assigned to each member via randomization.[8]

| SFC ▇ | MSG ▇ | SGM ▇ | SGM ▇ | MSG ▇ | SFC ▇ | SSG ▇ |
|---|---|---|---|---|---|---|
| 1 | 16 | 11 | 20 | 7 | 4 | 14 |
| CPT ▇ | MAJ ▇ | LTC ▇ | COL ▇ | LTC ▇ | CPT AS | WO1 ▇ |
| 10 | 18 | 13 | 15 | 8 | 2 | 17 |

Following group voir dire, the military judge began individual voir dire of each member, followed immediately by asking the parties if they wished to challenge that member for cause.[9] However, the military judge did not follow the randomization order. Instead, he followed the order of the seating chart, beginning with the bottom row and proceeding from left to right. In other words, the first person subject to individual voir dire and challenges for cause was CPT ▇, followed by MAJ ▇, then LTC ▇, and so on.

---

[6] *See* R.C.M. 911 discussion.

[7] We utilize the rank abbreviations common in our service throughout this opinion, that is: colonel (COL), lieutenant colonel (LTC), major (MAJ), captain (CPT), warrant officer one (WO1), command sergeant major (CSM), sergeant major (SGM), first sergeant (1SG), master sergeant (MSG), sergeant first class (SFC), and staff sergeant (SSG).

[8] The numbers in this chart are not consecutive because, as noted above, *supra* footnote 4, numerous members subject to randomization had been excused by the convening authority before assembly.

[9] The military judge was apparently attempting to follow a procedure described in the Military Judges' Benchbook as "rolling challenges." Dep't of Army Pam. 27-9: Military Judges' Benchbook, para. 2-5-3 note (29 Jul. 2025). "For 'rolling challenges,' judges: (1) call the members for individual voir dire *in the order of their randomly assigned number*, (2) invite challenges for cause immediately following the individual voir dire of each member, and (3) invite preemptory [*sic*] challenges only after a sufficient number of members have survived challenges for cause such that the exercise of peremptory challenges could not possibly cause a loss of quorum." *Id.* (emphasis added). When followed correctly, "rolling challenges" are an acceptable way to efficiently conduct individual voir dire and challenges for cause. The incorrect sequence led to the error in this case.

This process continued until the last member, SSG ██, was questioned and then successfully challenged for cause. At the end of the round, ten of the fourteen members had been successfully challenged and excused, reducing the number below the eight needed to establish quorum. The four remaining members were: SFC ██ (#4), LTC ██ (#13), COL ██ (#15), and WO1 ██ (#17).

The military judge then called for the next fourteen members, in accordance with randomization, who had not yet been excused. A second round of voir dire began later that same afternoon with the new members assembled and seated accordingly:

| SFC ██ 31 | MSG ██ 26 | SGM ██ 23 | CSM ██ 44 | 1SG ██ 35 | SFC ██ 27 | SFC ██ 34 |
|---|---|---|---|---|---|---|
| CSM ██ 29 | MAJ ██ 41 | LTC ██ 21 | LTC ██ 22 | LTC ██ 28 | CSM ██ 25 | CSM ██ 24 |

After group voir dire, the military judge conducted individual voir dire and heard challenges in the same fashion as he had with the first group, beginning with CSM ██, who was successfully challenged and excused. Next, the parties questioned MAJ ██, who was not challenged, then LTC ██, who was successfully challenged and excused. Following the questioning of LTC ██ and LTC ██, neither of whom were excused, the military judge stated, "Counsel, I think we're at seven [members not excused]. We're going to go until we hit ten, unless trial counsel tells me they're going to waive their peremptory [challenge]."[10] After trial counsel requested an eleventh member be identified,[11] questioning and challenges continued with CSM ██ until the court reached SGM ██, the only additional member successfully challenged being CSM ██.

---

[10] The military judge went from left-to-right according to the seating chart, not in the order of the members' randomly assigned numbers (and thus seemingly skipping over lower-numbered members).

[11] Trial counsel requested an additional member to ensure the panel maintained a one-third enlisted quorum, assuming the appellant had requested a panel with at least one third enlisted members under R.C.M. 903(a)(1)(A)(i). The appellant had deferred forum selection at the initial arraignment and never made a forum election on the record, either orally or in writing. *See* R.C.M. 903(b) (describing the form of the election). When an accused does not make a timely election for an enlisted panel, the members are impaneled solely according to their random number order, regardless of rank. R.C.M. 912A(d)(2). Though that is ultimately what happened in this case, the military judge and trial counsel's misplaced emphasis on ensuring an enlisted quorum could, with a different random number sequence, have resulted in additional members being improperly excused and members with higher numbers being improperly impaneled.

4

After neither party challenged SGM ▮ for cause, the military judge stopped individual voir dire, announcing: "So we're at 11 [members not excused]. I think that's a good place to stop . . . [so] I'll go back and excuse and advise the remainder . . . ." Command Sergeant Major ▮, 1SG ▮, SFC ▮, and SFC ▮ were never subject to individual voir dire, and the military judge did not invite challenges for cause of these four members.

The following day, the four members remaining from the first round of voir dire, as well as the seven from the second round *who had been questioned* and not excused, returned to the courtroom. Command Sergeant Major ▮, 1SG ▮, SFC ▮ and SFC ▮ were not among the returning members.

Following additional group and individual voir dire (limited to whether any potential relationships existed between the members), the government used its peremptory challenge to excuse LTC ▮ (#22). The defense subsequently used its peremptory challenge against COL ▮ (#15).[12]

Following the exercise of peremptory challenges, the remaining members *physically present*, based on their randomized order, were:

| | |
|---|---|
| SFC ▮ | 4 |
| LTC ▮ | 13 |
| WO1 ▮ | 17 |
| SGM ▮ | 23 |
| CSM ▮ | 24 |
| MSG ▮ | 26 |
| LTC ▮ | 28 |
| SFC ▮ | 31 |
| MAJ ▮ | 41 |

The military judge then (incorrectly) described MAJ ▮ (#41) as "of the remaining nine. . . . the highest number, meaning the last person in that [randomization] list" and excused him. He then impaneled the eight remaining, physically-present members.

However, the remaining members *who had not been excused* pursuant to a challenge (in other words, including the four members from the second voir dire

---

[12] We pause to note that, on appeal, appellant challenged whether the military judge erred in denying appellant's challenge for cause of COL ▮. Appellant's use of his peremptory challenge on COL ▮ "preclude[s] further consideration of the challenge of that excused member upon later review." R.C.M. 912(f)(4).

group who had been neither questioned nor challenged), in randomization order, actually consisted of:

| | |
|---|---|
| SFC ■■ | 4 |
| LTC ■■ | 13 |
| WO1 ■ | 17 |
| SGM ■■ | 23 |
| CSM ■■ | 24 |
| MSG ■■ | 26 |
| *SFC* ■ | *27* |
| LTC ■■ | 28 |
| SFC ■ | 31 |
| SFC ■■ | 34 |
| 1SG ■■ | 35 |
| MAJ ■■ | 41 |
| CSM ■■ | 44 |

Significantly, *SFC* ■■ *(#27)*, who was not excused pursuant to a challenge, did not sit as a member, despite possessing the seventh-lowest randomized number. Sergeant First Class ■ (#31) sat as the eighth member instead.

## LAW AND DISCUSSION

Whether a trial court has jurisdiction is a question of law we review de novo. *United States v. King*, 83 M.J. 115, 120 (C.A.A.F. 2023).

> This Court's case law distinguishes between jurisdictional and administrative errors in the convening of a court-martial. Jurisdictional error occurs when a court-martial is not constituted in accordance with the UCMJ. Jurisdiction depends upon a properly convened court, composed of qualified members chosen by a proper convening authority, and with the charges properly referred.[13]

*United States v. Adams*, 66 M.J. 255, 258 (C.A.A.F. 2008) (first citing *United States v. Colon*, 6 M.J. 73, 74 (C.M.A. 1978); and then citing UCMJ art. 25, R.C.M. 201(b), 503, 504, and 505). The inclusion of interlopers, or "members who are barred from participating by operation of law, [or] who are never detailed by the convening authority" results in jurisdictional error. *King*, 83 M.J. at 122. However, "the process of excusing [detailed] primary members and adding substitute members

---

[13] Appellant has not contested the qualifications or selection of the panel members. *See* UCMJ art. 25.

6

involves an administrative, not a jurisdictional matter." *United States v. Mack*, 58 M.J. 413 (C.A.A.F. 2003).

In this case, the government concedes that the military judge erred by overlooking SFC ███and impaneling SFC ███. However, it contends that this error was administrative, not jurisdictional. We agree.

While the randomization and numerical impaneling of members under RCM 911 and RCM 912A add a novel element to this case, it is still a case of a properly detailed panel member being erroneously omitted, or skipped, at impanelment – for which circumstance our superior court and this court have provided clear guidance on resolving this type of administrative error.

We have previously found administrative error when an assembled member was erroneously released by the military judge without having been challenged, either for cause or peremptorily. *United States v. Latimer*, 30 M.J. 554, 562-63 (A.C.M.R. 1990) (noting "it is generally agreed that noncompliance with Article 29(a), UCMJ, is not jurisdictional error . . . ." (citation omitted)). Moreover, our superior court has continued to treat "as an administrative error the government's failure to place on the record the reason that existed for excusing a panel member." *King*, 83 M.J. at 122. Based on these principles alone, we would find the error in this case to be administrative, and not jurisdictional.

We find additional support in the rationale of our superior court in *United States v. Colon*, 6 M.J. 73 (C.M.A. 1978). There, the military judge proceeded to trial with only six of the ten detailed panel members after the other four failed to report at the required time. *Id.* at 74. In determining the error was non-jurisdictional, the court noted "no statutory conflict" existed where the court-martial met "the required quorum for that particular type of court-martial." *Id.* While the Rules for Courts-Martial were amended in light of *Colon*, our superior court has continued to make clear that jurisdiction is tied to, and limited by, statutory authorities, *e.g. United States v. Sargent*, 47 M.J. 367, 368 (C.A.A.F. 1997) ("RCM 805 was drafted in light of . . . *Colon*. Neither its wording nor its regulatory history impart to it jurisdictional significance."), not those "rules prescribed by the President" pursuant to Article 29(b), UCMJ.[14]

---

[14] In other words, while Article 29(b), UCMJ, authorizes the President to prescribe additional rules regarding impanelment, the President's doing so does not make those additions statutory requirements, rather regulatory requirements promulgated via a statutory authority. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 ("In the framework of our Constitution, the President's power to see that

(continued. . .)

7

Appellant's court-martial met the statutory requirements of court-martial jurisdiction: the offenses for which appellant was tried were properly before a general court-martial, *see* UCMJ art. 18, the court-martial was convened by an appropriate authority, *see* UCMJ art. 22, the members were appropriately detailed, *see* UCMJ art. 25, and quorum was maintained throughout the court-martial, *see* UCMJ art. 29. And while appellant now challenges the appropriateness of SFC ███ serving in lieu of SFC SJ, the court-martial was "composed in accordance with these rules with respect *to number and qualifications* of its personnel." *See* R.C.M. 201(b)[15] (emphasis added). Therefore, we find, much like the *Colon* and *Sargent* courts, that SFC ███ exclusion constitutes an administrative, non-jurisdictional error, for which we must test for prejudice.

"Administrative errors . . . are not necessarily fatal to jurisdiction, and may be tested for prejudice . . . ." *Adams*, 66 M.J. at 259. An unobjected to "administrative error committed by the Government . . . is reviewed for plain error." *King*, 83 M.J. at 123. Under our plain error standard of review, appellant "bears the burden of establishing: (1) there is error; (2) the error is clear or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018).

Here, we find no prejudice. Contrary to appellant's assertion, SFC ███ was not an interloper.[16] SFC ███ met Article 25, UCMJ, qualification requirements; was properly detailed to the court-martial pursuant to the convening order; was subject to and included in the randomization of members; was subject to voir dire and challenges from both parties; and was on the final panel composition without any objection from appellant. Appellant "is not entitled to a specific panel. *King*, 83 MJ at 123-124 (citing *United States v. Easton*, 71 M.J. 168, 176 (C.A.A.F. 2012)(noting

---

(. . . continued)
the laws are faithfully executed refutes the idea that he is to be a lawmaker. The Constitution limits his functions in the lawmaking process . . . . [a]nd the Constitution is neither silent nor equivocal about who shall make laws which the President is to execute.").

[15] The RCM 201(b) discussion cites to RCM 501-504 to define "number and qualifications" of personnel, none of which refer to randomization. Notably, the discussion omits RCM 505, which addresses how members are excused. Thus by implication a "qualified" member for purposes of jurisdiction does not have to be a "properly randomized" member nor does it require adherence to the RCM 505 excusal and replacement procedures.

[16] An interloper is one "who was not detailed at all to the court-martial on which he sat." *King*, 83 M.J. 123 (quoting *United States v. Gebhart*, 34 M.J. 189, 192 (C.M.A. 1992).

that military accused do not have the right to have their cases tried by a particular court). As the properly detailed members who ultimately heard the case were subject to randomization, the structural safeguards were sufficiently met. The appellant's right to an impartial panel was not impacted by the military judge's error with the randomization order of members.

## CONCLUSION

The finding of guilty and the sentence are AFFIRMED.

Senior Judge MORRIS concurs.

MURDOUGH, Judge, dissenting;

I rely upon many of the same authorities as the majority, but I reach a different conclusion. I would hold that the improper, *de facto* excusal of SFC ▮ and the concomitant impanelment of SFC ▮ constituted structural error that deprived the trial court of jurisdiction.

"[C]ourt members are, unless properly waived, an indispensable jurisdictional element of a general court-martial." *United States v. King*, 83 M.J. 115,121 (C.A.A.F. 2023) (quoting *United States v. Ryan*, 5 M.J. 97, 101 (C.M.A.1978)). "Jurisdictional error occurs when a court-martial is not constituted in accordance with the UCMJ." *United States v. Adams*, 66 M.J. 255, 258 (C.A.A.F. 2008) (citation omitted). "A court-martial composed of members who are barred from participating by operation of law . . . is improperly constituted and the findings must be set aside as invalid." *Id.*

Article 29(b) of the UCMJ directs the military judge of a general court-martial to impanel members "Under rules prescribed by the President."[17] One such rule is R.C.M. 912A(a), which directs: "After challenges for cause and peremptory challenges are exercised, the military judge. . . *shall impanel* the members based on

---

[17] Additionally, Article 25(e)(4) currently states, "When convening a court-martial, the convening authority shall detail as members thereof members of the armed forces under such regulations as the president may prescribe for the randomized selection of qualified personnel, to the maximum extent practicable." This amendment to Article 25 took effect after the arraignment in appellant's court-martial. But Article 29, as was in effect both at the time of the court-martial and today, also refers to impanelment, so to the extent the majority looks only to Article 25 to identify any shifts in the statutory foundation of courts-martial jurisdiction, I respectfully disagree.

the order assigned in R.C.M. 911(a)" (emphasis added). Another presidentially-prescribed rule is R.C.M. 505(c)(2)(A), which provides four means by which a member may be excused after assembly: (1) by the convening authority for good cause shown on the record; (2) by the military judge for good cause shown on the record; (3) as a result of challenge under R.C.M. 912; or (4) by the military judge when the number of members is in excess of the number of members required for impanelment.

No party asserts that SFC ██ was excused by the convening authority or military judge for good cause shown on the record. It is indisputable that SFC ██ was not challenged, either for cause or peremptorily—the military judge did not even offer the parties a chance. [18] Finally, his assigned number was lower than both LTC ██ and SFC ██; he could not have been properly excused as an excess member. The majority does not dispute these facts. And nobody disputes that the members were not correctly impaneled according to their assigned numbers under R.C.M. 912A. Even appellee acknowledges that not only was the impanelment of SFC ██ error, the error was plain and obvious.

However, the majority treats this as administrative, and therefore forfeitable, error. I respectfully disagree. Military jurisprudence traditionally treated the situation where the "wrong" members sat the panel as administrative error, so long as all members who heard the case had at one point been selected pursuant to Article 25. *See, e.g., United States v. Mack,* 58 M.J. 413, 417 (C.A.A.F. 2003) ("the process of excusing primary members and adding the substitute members involves an administrative, not a jurisdictional matter."); *King,* 83 M.J at 123. But the authorities defining "interlopers" as those persons who are "not detailed at all to the court-martial," rather than a situation where one detailed member errantly sits the case vice another detailed member, were written at a time when the convening authority not only chose the members, but also how many members would report at

---

[18] I also have significant concerns about the military judge seeking to pre-commit a party from exercising its peremptory challenge, for no apparent reason except to save time. The military judge, when he announced his plan to prematurely cut off individual voir dire, stated: "We're going to go until we hit ten, unless trial counsel tells me they're going to waive their peremptory [challenge]." I believe this attempt to discourage a party from using a peremptory challenge also amounted to error, though it was ultimately harmless because, in the end, both sides exercised a peremptory challenge.

assembly, as well as the order in which they would be detailed, excused, and replaced.[19] *E.g. King,* 83 M.J. at 124. Now, the convening authority's responsibility and authority to select the panel mostly ends before assembly.[20] In other words, I believe subsequent changes to the pertinent statutes and regulations have shifted the boundary between administrative and jurisdictional error.

Today, while the convening authority retains the ability to select the venire from which the panel will eventually be drawn, the military judge decides how many members report to take the oath. R.C.M. 911(b). And the law itself dictates how members are impaneled, i.e. the process by which excused members are replaced by other, not excused members—regardless of whether the excusals occur before or after assembly. R.C.M. 911(a); R.C.M. 912A(a). I believe this change in the law is significant, because it changed the structure of courts-martial and how they are constituted. Once upon a time, "the intent of the convening authority" received significant deference in deciding how substitute members were detailed as replacements vice excused members. *Adams,* 66 M.J. at 258; *accord Mack,* 58 M.J. at 416 (citation omitted). Now the convening authority has no say in that process.

Instead, if the accused does not outright waive trial by members, the law establishes the process and sequence by which the members are assembled and ultimately impaneled, and it is largely devoid of discretion. The military judge *must* randomize the entire list of detailed members, however many. The members present at assembly *must* be those with the lowest assigned number who have not been previously excused, in whatever quantity the military judge directs. Then, following

---

[19] Prior to 27 December 2023, the convening authority decided how many members were detailed to a court-martial; if the number was no fewer than the minimum necessary to maintain the appropriate quorum, then there was no upper limit to the number of members. *See* Rule for Courts-Martial, *Manual for Courts-Martial, United States* (2019 ed.) [R.C.M. (2019)] 503(a)(1)(B). All detailed members who had not been excused prior to assembly would report for assembly and take the members' oath. After assembly, if the exercise of challenges caused the number of members to drop below that necessary to maintain the appropriate quorum, the convening authority would detail new members to replace those who had been excused—again deciding not only the members, but how many would report for duty. *See* R.C.M. (2019) 505(c)(2)(B). The military judge did not assign random numbers to the members until after challenges for cause were complete. *See* R.C.M. (2019) 912(f).

[20] Convening authorities retain limited ability to excuse members post-assembly for good cause and may still add new members post-assembly when excusals have exhausted the entire venire detailed by the applicable convening order(s). *See* R.C.M. 505(c)(2)(A)(i); 505(c)(2)(B).

any excusals resulting from a challenge, the military judge *must* impanel members in order of the previous randomization.[21] Any deviance from this procedure infects the structure of the court-martial to the same degree as a never-detailed interloper, because it produces a panel that is not constituted in accordance with the R.C.M. and by extension the UCMJ.

At the time of impanelment, SFC ■ had not been properly excused under R.C.M. 505(c)(2)(A), and thus legally remained a member of appellant's court-martial panel. Correspondingly, SFC ■ should have been excused as excess, yet he was erroneously impaneled. And it is irrelevant that SFC ■, whom neither party challenged, was by every indication an impartial, qualified panel member. The panel that tried, convicted, and sentenced appellant included a person who by operation of law should not have sat as a member. *See Adams,* 66 M.J. at 258.

The court-martial was not impaneled under the rules prescribed by the President, which means it was not constituted in accordance with the UCMJ, and thus the trial court lacked jurisdiction. *Id.* This error cannot be waived or forfeited, notwithstanding appellant's acquiescence to the trial judge's erroneous process. R.C.M. 907(b)(1).

I would set aside the findings and sentence and dismiss the charges and specifications for lack of jurisdiction.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[21] With the sole exception that, if an enlisted accused requests a panel of at least one-third enlisted members, the military judge first uses the randomized list to identify the necessary number of enlisted members to fulfill that requirement, before impaneling the remainder according to the overall sequence. R.C.M. 912A(d)(1).