*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES

_____

## UNITED STATES
Appellee

**v.**

## Alexander L. DRISKILL, Airman
United States Air Force, Appellant

**No. 23-0066**
Crim. App. No. 39889

Argued October 25, 2023—Decided March 4, 2024

Military Judges: Willie J. Babor (trial) and
Dayle P. Percle (remand)

For Appellant: *Major Frederick J. Johnson* (argued); *Major Kasey W. Hawkins* (on brief); *Mark C. Bruegger*, Esq.

For Appellee: *Captain Jocelyn Q. Wright* (argued); *Colonel Matthew D. Talcott*, *Lieutenant Colonel James P. Ferrell*, *Lieutenant Colonel G. Matt Osborn*, and *Mary Ellen Payne*, Esq. (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge HARDY, and Judge JOHNSON joined.

_____

Judge MAGGS delivered the opinion of the Court.

In this appeal, Appellant challenges the finding that he is guilty of violating Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012), by possessing obscene cartoons. Appellant argues that trying him for the alleged offense violated the prohibitions against double jeopardy in the Fifth Amendment and Article 44(a), UCMJ, 10 U.S.C. § 844 (2012), because another court-martial had previously tried him for the same offense. Applying this Court's recent precedent in *United States v. Rice*, 80 M.J. 36 (C.A.A.F. 2020), we agree with Appellant and grant appropriate relief.

## I. Background

The applicable version of Article 134, UCMJ, commonly known as the "General Article," provides:

> Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

Article 134, UCMJ, 10 U.S.C. § 934 (2012).[1]

In a portion of the *MCM* applicable to this case, the President parsed the language of Article 134, UCMJ, and explained its meaning as follows:

> Article 134 makes punishable acts in three categories of offenses not specifically covered in any other article of the code. These are referred to as "clauses 1, 2, and 3" of Article 134. Clause 1

---

[1] The version of Article 134, UCMJ, in the 2012 edition of the U.S.C. is reprinted in *Manual for Courts-Martial, United States* app. 2 (2016 ed.) (*MCM*). The parties agree that this version of Article 134, UCMJ, governs this case. We do not address the subsequent amendment to Article 134, UCMJ.

offenses involve disorders and neglects to the prejudice of good order and discipline in the armed forces. Clause 2 offenses involve conduct of a nature to bring discredit upon the armed forces. Clause 3 offenses involve noncapital crimes or offenses which violate Federal law including law made applicable through the Federal Assimilative Crimes Act.

*MCM* pt. IV, para. 60.c.(1). Although the President's explanations of the UCMJ are not binding on this Court, *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017), this Court followed an earlier, similar version of this explanation in *United States v. Leonard*, 64 M.J. 381, 382-83 (C.A.A.F. 2007) (following *MCM* pt. IV, para. 60.c.(1) (2005 ed.)).

Appellant's first court-martial took place in 2018. He was charged with three specifications of violating Article 134, UCMJ. The third specification alleged that Appellant violated clause 3 of Article 134, UCMJ, by possessing obscene cartoons in violation of a federal criminal statute, 18 U.S.C. § 1466A(b)(1). The specification averred that:

> [Appellant] did, at or near Italy, between on or about 11 October 2016 and on or about 27 March 2018, knowingly and wrongfully possess obscene cartoons, to wit: visual depictions of minors engaging in sexually explicit conduct, and that said visual depictions were transported in foreign commerce by computer, in violation of 18 U.S. Code Section 1466A(b)(1), an offense not capital.

Section 1466A(b)(1) addresses the possession of obscene cartoons, stating:

> Any person who, *in a circumstance described in subsection (d)*, knowingly possesses a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that—
>
> > (1)(A) depicts a minor engaging in sexually explicit conduct; and
> >
> > (B) is obscene
> >
> > . . . .
>
> . . . shall be subject to [certain specified] penalties.

*Id.* (emphasis added). One of the circumstances, described in subsection (d), is that "any visual depiction involved in the offense has been . . . transported in interstate or foreign commerce by any means." *Id.* § 1466A(d)(4). Another circumstance is that "the offense is committed in the special maritime and territorial jurisdiction of the United States or in any territory or possession of the United States." *Id.* § 1466A(d)(5).

Appellant pleaded not guilty to the charge and all three of its specifications. After the close of evidence, Appellant contended in his argument on findings that there was not enough evidence to prove the third specification. He stated that he could not have violated § 1466A(b) while he was in Italy because § 1466A "is not a statute of extraterritorial application." Appellant, in an additional filing requested by the military judge in regard to this issue, asked the military judge to dismiss the specification with prejudice "because jeopardy has attached."[2]

The military judge dismissed the third specification. She concluded that Congress had intended for § 1466A "to apply only within the jurisdictional limits of the United States." On this basis, she held that the court did not have jurisdiction to try the third specification. The military judge, however, did not agree with Appellant that the specification should be dismissed with prejudice. The military judge ruled: "The lack of extraterritoriality within . . . § 1466A does not foreclose prosecution for the offense alleged, it only forecloses prosecution under the current charging scheme."[3]

Appellant's second court-martial occurred in 2019. Appellant was charged with one specification of violating Article 134, UCMJ, and two specifications of violating Article

---

[2] From the materials before us, it is unclear how trial defense counsel's closing argument challenging the jurisdictional element became characterized as a motion to dismiss by the military judge.

[3] The military judge found Appellant not guilty of the two other specifications in the charge sheet.

120b, UCMJ, 10 U.S.C. § 920b (2012). The specification under Article 134, UCMJ, was similar to the obscene cartoons specification dismissed at the first court-martial, but it alleged a violation of clause 2 of Article 134, UCMJ, instead of clause 3. The specification asserted that Appellant "did, at or near Italy, between on or about 11 October 2016 and on or about 27 March 2018, knowingly and wrongfully possess obscene cartoons, such conduct being of a nature to bring discredit upon the armed forces."

Appellant moved to dismiss the specification under Article 134, UCMJ, on grounds that trying him for this offense would violate the double jeopardy prohibitions in the Fifth Amendment of the United States Constitution and Article 44(a), UCMJ, because he had already been tried for the same offense at his first court-martial. The military judge in the second court-martial denied the motion, relying on the statement by the military judge in the first court-martial that dismissal of the specification was for lack of jurisdiction and therefore did not foreclose alleging the offense under a different charge. Appellant thereupon petitioned the United States Air Force Court of Criminal Appeals (AFCCA) for a writ of mandamus, asking the AFCCA to set aside the military judge's denial of his motion to dismiss the specification. The AFCCA denied the writ. *In re Driskill*, Misc. Dkt. No. 2019-03, 2019 CCA LEXIS 281, at *3-4, 2019 WL 2896472, at *2 (A.F. Ct. Crim. App. July 2, 2019) (unpublished) (order).

Following these rulings, Appellant pleaded guilty to the specification under Article 134, UCMJ, subject to the understanding that the double jeopardy issue he had raised was not waived. Appellant pleaded not guilty to the additional specifications under Article 120b, UCMJ, but the court-martial found him guilty of these offenses following a trial. The court-martial sentenced Appellant to a dishonorable discharge, confinement for forty years and nine months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority did not modify the findings or sentence.

On appeal, the AFCCA concluded that no violation of
the prohibitions against double jeopardy in the Fifth
Amendment and Article 44(a), UCMJ, had occurred.
*United States v. Driskill*, No. ACM 39889 (f rev), 2022 CCA
LEXIS 496, at *42-43, 2022 WL 3589824, at *14 (A.F. Ct.
Crim. App. Aug. 23, 2022) (unpublished). The AFCCA rea-
soned that jeopardy had not attached to the specification
concerning obscene cartoons at the first court-martial be-
cause that specification "was dismissed for lack of jurisdic-
tion—grounds wholly unrelated to Appellant's guilt or in-
nocence—and that the dismissal came before Appellant
was acquitted of the remaining specifications." *Id.* at *42,
2022 WL 3589824, at *14. Rejecting Appellant's other ar-
guments, the AFCCA affirmed the findings. *Id.* at *4-5,
2022 WL 3589824, at *2. The AFCCA, however, reassessed
the sentence, reducing the period of confinement to thirty
years. *Id.* at *57, 2022 WL 3589824, at *20.

This Court granted review of the following issue:

> In Appellant's first court-martial, the military
> judge dismissed the charge of wrongful possession
> of obscene cartoons after closing arguments. Did
> the Government's reprosecution of Appellant for
> the same offense violate the Fifth Amendment
> and Article 44's prohibitions against double
> jeopardy?

*United States v. Driskill*, 83 M.J. 327 (C.A.A.F. 2023) (order
granting review). As discussed below, we answer in the af-
firmative and grant appropriate relief.

## II. Standard of Review and Governing Law

The granted double jeopardy issue is a question of law
that we must answer de novo. *United States v. Hutchins*,
78 M.J. 437, 444 (C.A.A.F. 2019).

Three prohibitions against "double jeopardy" apply to
courts-martial. *United States v. Rice*, 80 M.J. 36, 40 n.8
(C.A.A.F. 2020). The Double Jeopardy Clause of the Fifth
Amendment provides: "No person shall be . . . subject for
the same offence to be twice put in jeopardy of life or limb."
U.S. Const. amend. V. Similarly, Article 44(a), UCMJ,

provides: "No person may, without his consent, be tried a second time for the same offense." And Rule for Courts-Martial (R.C.M.) 907(b)(2)(C) requires dismissal of a charge or specification if "[t]he accused has previously been tried by court-martial or federal civilian court for the same offense."

Applying these three prohibitions requires multiple steps. One step is determining whether the accused has been "twice put in jeopardy" or, stated differently, "tried twice." Answering this question is sometimes complicated because not every court-martial proceeding counts as a "trial" for purposes of the Fifth Amendment, Article 44, UCMJ, and R.C.M. 907(b)(2)(C). Several rules address this issue. Most relevant here is this Court's holding in *United States v. Easton* that jeopardy attaches pursuant to Article 44(a), UCMJ, "when evidence is introduced" and that "once jeopardy has attached, an accused may not be retried for the same offense."[4] 71 M.J. 168, 172 (C.A.A.F. 2012). R.C.M. 907(b)(2)(C)(i)(I) similarly provides, in pertinent part, that a court-martial proceeding is not considered a trial pursuant to the double jeopardy doctrine unless "[i]n the case of a trial by military judge alone, presentation of the evidence on the general issue of guilt has begun." Another relevant rule is that jeopardy cannot attach if the court-martial lacks jurisdiction. R.C.M. 907(b)(2)(C)(iv) states: "No court-martial proceeding which lacked jurisdiction to try the accused for the offense is a trial in the sense of this rule."

---

[4] Following *Easton*, Article 44 was amended to specify that jeopardy attaches differently depending on the forum. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5226, 130 Stat. 2000, 2910-11 (2016). In the case of a trial by military judge alone, jeopardy attaches on the presentation of evidence; in the case of a trial by member panel, jeopardy attaches when the members have been impaneled. *See* Article 44(c)(1)(A)-(2)(A), UCMJ, 10 U.S.C. § 844(c)(1)(A)-(2)(A) (2018); R.C.M. 907(b)(2)(C)(i)(I)-(II).

Another step in applying the prohibitions against double jeopardy is determining whether the accused is truly being tried twice "for the same offense." When specifications allege offenses under different statutory provisions, this step requires courts to look closely at the elements of each of the alleged offenses. In *Blockburger v. United States*, 284 U.S. 299, 303-04 (1932), the Supreme Court considered whether a single sale of morphine could violate separate sections of a federal criminal statute that prohibited the sale of narcotics and, thus, be considered separate offenses. One section of the statute prohibited the sale of narcotics except in their original packaging. *Id.* at 303. Another section prohibited the sale of narcotics absent a written order. *Id.* at 303-04. The Supreme Court in *Blockburger* announced the following general test for deciding whether two offenses are the same for purposes of double jeopardy: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied . . . is whether each provision requires proof of a fact which the other does not." *Id.* at 304. Applying this test, the Supreme Court held that the narcotic charges at issue for the one sale were not for the same offense because each of the two respective sections of the criminal statute required proof of a fact that the other did not. *Id.*

While the *Blockburger* test *generally* applies in courts-martial, this Court in *Rice* declined to follow "the strict application of *Blockburger* in the context of the intentionally capacious Article 134, UCMJ." 80 M.J. at 42. The Court in *Rice* held instead that only some "differences are valid ones when determining what constitutes the same offense for purposes of a double jeopardy analysis involving Article 134, UCMJ." *Id.* at 43. Because the two specifications under comparison in this case both allege violations of Article 134, UCMJ, a detailed review of *Rice* is necessary to explain the applicable law.

In *Rice*, the United States first prosecuted the accused in a federal district court. *Id.* at 38. One count of the indictment alleged that the accused had possessed child pornography in violation of 18 U.S.C. § 2252A. *Id.* at 38 & n.2. To

establish a violation of this civilian criminal statute, the government had to prove that the child pornography at issue had been transported in interstate commerce or produced with materials that had been transported in interstate commerce. *Id.* at 38 n.2. The Court identified this requirement as a "jurisdictional element" of § 2252A. *Id.* at 40. A "jurisdictional element" is an element that links a statute to one of the legislative powers of Congress enumerated in the United States Constitution, such as the power to regulate interstate commerce in U.S Const. art. I, § 8, cl. 3. *Torres v. Lynch*, 578 U.S. 452, 457 (2016).

The government subsequently tried the appellant in *Rice* by court-martial. 80 M.J. at 38. Two specifications of the charges against him in the court-martial alleged that he had possessed child pornography in violation of clause 2 of Article 134, UCMJ. *Id.* The appellant argued that trying him by court-martial for these two specifications would contravene the prohibition against double jeopardy because the government had already prosecuted him in federal district court for the same offense. *Id.* at 39. The government responded that per *Blockburger*, the two specifications in the court-martial did not allege the "same offence" for which he was tried in the federal district court because the § 2252A offense required proof of transportation in interstate commerce, while the offense charged under clause 2 of Article 134, UCMJ, required proof that the offense was service discrediting. *Id.* at 40. This Court, however, rejected the government's argument because it saw "no evidence that Congress intended Article 134, UCMJ, to serve as a vehicle for the military to reprosecute Title 18 offenses tried in a federal civilian court simply by removing a jurisdictional element and charging it as a violation of clause 1 or 2." *Id.* at 41. Accordingly, this Court disregarded the jurisdictional element of the § 2252A offense for the purpose of applying the *Blockburger* test and concluded that the subsequent court-martial for the possession specifications in *Rice* violated the Double Jeopardy Clause. *Id.* at 44.

## III. Discussion

Appellant argues in this appeal, as he argued before the military judge and the AFCCA, that the prohibitions against double jeopardy in the Fifth Amendment and Article 44(a), UCMJ, bar his second trial for the possession of obscene cartoons in violation of Article 134, UCMJ. We agree with Appellant. Our decision rests on two primary conclusions. The first conclusion is that jeopardy attached in the first court-martial because the Government introduced evidence in the case and because the court-martial had jurisdiction to try Appellant for the offense. The second conclusion is that the specifications in the first and second court-martial concerning obscene cartoons were "for the same offense" under the analysis that this Court used in *Rice*.

### A. Attachment of Jeopardy in the First Court-Martial

Under R.C.M. 907(b)(2)(C)(i)(I) and this Court's decision in *Easton*, jeopardy attaches to an offense when the Government introduces evidence on the general issue of guilt. The parties do not dispute that this happened in the first court-martial.[5] The military judge and the AFCCA, however, reasoned that jeopardy did not attach in this case because the first court-martial lacked jurisdiction to try Appellant for the specification concerning obscene cartoons. We agree with the general proposition that jeopardy cannot attach if the court-martial lacks jurisdiction because R.C.M. 907(b)(2)(C)(iv) provides that "[n]o court-martial proceeding which lacked jurisdiction to try the accused for the offense is a trial in the sense of [the rule against double jeopardy]." But we cannot agree that the

---

[5] A complete record of trial was not prepared for the first court-martial because Appellant was not found guilty of any offense. But the military judge in the first court-martial issued a written ruling, included in the record in the present case, which described evidence that the Government presented at the first court-martial.

first court-martial lacked either personal or subject matter jurisdiction.

The first court-martial had personal jurisdiction over Appellant under Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1) (2012), because, according to a stipulation of fact in the record, he was a member of a "regular component of the armed forces." The stipulation specifies that Appellant was an active duty Airman assigned to Aviano Air Base in Italy at the time of the offense. Appellant further testified to his military membership at his second trial when he confirmed that he enlisted in 2016 for a term of six years and had never been released from active duty.

The first court-martial also had subject matter jurisdiction to determine whether Appellant had violated Article 134, UCMJ. Article 134, UCMJ, provides that it applies to "persons subject to this chapter," referring to Chapter 47 of Title 10 of the U.S. Code, which contains the UCMJ. Thus, alleging that the offense occurred in Italy did not deprive the court-martial of jurisdiction over either Appellant or the offense under Article 134, UCMJ, because Article 5, UCMJ, 10 U.S.C. § 805 (2012), provides that "[t]his chapter applies in all places."

The military judge reached a different conclusion, reasoning that the court-martial lacked jurisdiction over the offenses because § 1466A did not apply to conduct outside of the "special maritime and territorial jurisdiction of the United States or in any territory or possession of the United States." We cannot agree because the question of whether the court-martial had personal and subject matter jurisdiction is distinct from the merits question of whether the Government alleged and proved a fact necessary to show a violation of § 1466A, namely, that the alleged conduct occurred in a location to which the statute applies.[6]

---

[6] Appellant argues that § 1466A could apply in Italy if the Government could prove that the offending conduct occurred at an installation such as Aviano Air Base. This Court previously entertained a similar argument with respect to another federal

On this point, this Court's decision in *United States v. Williams*, 17 M.J. 207 (C.M.A. 1984), is instructive. In *Williams*, the accused was found guilty of violating clause 3 of Article 134, UCMJ, when he kidnapped someone on Fort Hood in violation of a federal statute, 18 U.S.C. § 1201(a)(2). *Id.* at 208-09. On appeal, however, this Court held that the evidence was legally insufficient to sustain the finding of guilt because the government had not proved that the offense occurred on a portion of Fort Hood that was within the " 'special maritime and territorial jurisdiction of the United States' " as § 1201(a)(2) required. *Id.* at 215. The Court emphasized that "all factual issues concerning guilt or innocence—including any issue of territorial jurisdiction—must be submitted to the members for determination." *Id.* The lesson of *Williams* is that the Government's failure to prove a statutory element of this kind concerns the sufficiency of the evidence rather than the jurisdiction of the court-martial.

In this case, confusion may have arisen about whether the jurisdiction of the first court-martial depended on the location of the offense because federal statutory elements requiring that conduct occur in the territory of the United States, or affect interstate or foreign commerce, are typically called "jurisdictional elements." This phrase, however, is a term of art. The phrase refers to elements that link a statute to a constitutional power of Congress to legislate, not to the jurisdiction of a court. As the United States Court of Appeals for the Tenth Circuit explained in *United States v. Tony*, 637 F.3d 1153, 1158-59 (10th Cir. 2011):

---

criminal statute that outlawed conduct only in the territory of the United States. *See United States v. Wilmot*, 11 C.M.A 698, 702, 29 C.M.R. 514, 518 (1960) (recognizing that "the question of whether Yokota Air Base Japan, an area located in a foreign country, is territory under the control of the United States" is a question subject to "proof of the facts"). Given our reasoning about the subject matter jurisdiction of this Court, we need not express an opinion on this issue in this case.

> [A] "jurisdictional element" . . . is " 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime." The absence of a required element "is not jurisdictional in the sense that it affects a court's subject matter jurisdiction, *i.e.*, a court's constitutional or statutory power to adjudicate a case."

*Id.* (citations omitted).

Confusion may also have arisen because of Appellant's own arguments. Appellant incorrectly asserted in the filing submitted to the military judge that the court-martial lacked subject matter jurisdiction because § 1466A does not apply outside of the United States. While this argument may have contributed to the military judge's ruling, it is not correct, and we do not believe that this incorrect argument precluded Appellant from subsequently making a double jeopardy argument in the second court-martial. Appellant had no double jeopardy argument to forfeit or waive until the second court-martial began. And Appellant specifically preserved his double jeopardy argument at his second court-martial by raising it before entering his pleas. *See United States v. Collins*, 41 M.J. 428, 429 (C.A.A.F. 1995) (holding that double jeopardy arguments are waived if the appellant does not raise them before entering a guilty plea).

The Government presents three arguments against our conclusion that jeopardy attached in this case. First, the Government contends that in the context of courts-martial, extraterritoriality is indeed an issue of subject matter jurisdiction. The Government asserts that Article 18, UCMJ, 10 U.S.C. § 818 (2012), limits the subject matter jurisdiction of courts-martial to offenses "made punishable" under the UCMJ. Thus, according to the Government, the conduct alleged in the specification at issue in the first court-martial was not "punishable" under the UCMJ because § 1466A cannot reach conduct in Italy. The Government therefore argues that the military judge correctly dismissed the specification for lack of subject matter

jurisdiction. We cannot accept this argument because it implies that a court-martial's subject matter jurisdiction over an offense depends on whether the Government can prove all of the elements necessary to establish that the accused is guilty of the offense. No precedent supports that view.[7]

Second, the Government argues that the military judge's dismissal of the specification in the first court-martial was based on a legal judgment unrelated to factual guilt or innocence. The Government explains that the military judge was focused solely on a legal question, not an evidentiary question, and thus, the military judge never determined whether the Government's evidence was inadequate. Although the military judge's order to dismiss the third specification in the first court-martial focused on the lack of extraterritoriality, as the Government accurately emphasized here, we disagree with the military judge's legal determination regarding jurisdiction. The point in time at which jeopardy attaches is not when a military judge sitting as a court-martial makes a ruling based on the sufficiency of the evidence. Instead, as explained above, jeopardy attaches when the government introduces evidence on the general issue of guilt. *Easton*, 71 M.J. at 172; R.C.M. 907(b)(2)(C)(i)(I).

Third, the Government argues that the dismissal in the first court-martial was similar to a mistrial and should be treated like one. The Government reasons that "[i]f the military judge's dismissal is akin to a mistrial, [a] reprosecution is not barred because Appellant brought the motion." The Government explains that if Appellant had successfully moved for a mistrial at the first court-martial, then jeopardy would have terminated, and the Government could try him again for the same offenses. *See Easton*, 71 M.J. at 172 (explaining that the prohibition against double

---

[7] Additionally, this Court has previously stated that "[t]he question of the extraterritorial application of federal statutes has nothing to do with the jurisdiction of the federal courts." *United States v. Martinelli*, 62 M.J. 52, 56 n.4 (C.A.A.F. 2005).

jeopardy does not "preclude subsequent proceedings, inter alia, where there is 'manifest necessity' for declaring a mistrial or otherwise discharging the jury" (quoting *United States v. Perez*, 22 U.S. 579, 580 (1824))). We disagree because we see no precedent for the analogy that the Government proposes.

### B. Same Offense in First and Second Courts-Martial

Our second conclusion is that Appellant was tried twice for the same offense in the first and second courts-martial. In the first trial, as described above, Appellant was charged with violating clause 3 of Article 134, UCMJ, by possessing obscene cartoons in violation of § 1466A. In the second court-martial, he was charged with possessing the same obscene cartoons in violation of clause 2 of Article 134, UCMJ. It is true, and both parties agree, that a strict application of the *Blockburger* test, unaffected by this Court's decision in *Rice*, would indicate that these are different offenses because each offense contains an element that the other does not. Specifically, at the first trial, the Government was required to prove that the cartoons at issue had traveled in or affected foreign commerce or that the offense occurred in the special maritime and territorial jurisdiction of the United States, but the Government did not have to prove that the offense was service discrediting. At the second trial, the Government had to prove that possessing the cartoons was service discrediting but did not have to prove that the cartoons had traveled in or affected foreign commerce or that the offense occurred in the special maritime and territorial jurisdiction of the United States.

In *Rice,* this Court held that the Double Jeopardy Clause precluded the government from exploiting the unique nature of Article 134, UCMJ, to try a servicemember by court-martial for conduct that the government had previously charged as violations of Title 18 offenses in federal civilian court "simply by removing a jurisdictional element" and refiling the charges under clause 1 or 2 of Article 134, UCMJ. *Rice*, 80 M.J. at 40-44. To determine whether the earlier Title 18 charges and the later military Article 134 specifications covered the same offenses, the Court

15

disregarded the jurisdictional elements of the Title 18 offenses. And when the jurisdictional elements are disregarded, the § 1466A offense charged at the first trial no longer "requires proof of a fact which the [offense charged at the second trial] does not." *Blockburger*, 284 U.S. at 304. Accordingly, following *Rice*, we must conclude that trying Appellant for the offense under Article 134, UCMJ, at the second court-martial violated the prohibition against double jeopardy.

The Government presents two arguments against our conclusion that the two courts-martial tried Appellant for the same offense. First, the Government attempts to limit *Rice* by emphasizing its narrow holding. The Court in *Rice* specifically cautioned that its holding "does not reach beyond the 'unusual facts' of this case, and thus 'does not extend to those situations where additional substantive elements distinguish an offense charged under Article 134, UCMJ, from another criminal offense.'" 80 M.J. at 40 n.10 (citation omitted). We agree that the scope of *Rice* is narrow. But we see no meaningful difference between this case and *Rice*. In both cases, the accused were first charged with conduct violating a federal civilian criminal statute that included a jurisdictional element and were then later charged with the same conduct under clause 2 of Article 134, UCMJ. In both instances, if the jurisdictional elements of the federal civilian criminal statute are disregarded, the first offense does not require proof of any element the second offense does not.

The Government alternatively argues that this Court should reconsider *Rice* and apply the strict *Blockburger* test. Citing the dissent in *Rice*, the Government contends that there is no persuasive reason for disregarding elements when applying the *Blockburger* test. We do not believe that this argument is a sufficient reason to reconsider recent precedent. We have explained:

> For purposes of our analysis under the doctrine of *stare decisis* . . . we do not limit our review to whether [a prior decision] was wrongly decided, but rather we examine:

whether the prior decision is unworkable or
poorly reasoned; any intervening events; the
reasonable expectations of servicemembers;
and the risk of undermining public confidence
in the law.

*United States v. Quick*, 74 M.J. 332, 336 (C.A.A.F. 2015)
(footnote omitted). Because the Government has not addressed each of these factors in its brief, we decline to reconsider *Rice*.[8]

For these reasons, the finding of guilty for the Charge
and its Specification must be set aside, and the AFCCA
must conduct a new review under Article 66, UCMJ, 10
U.S.C. § 866 (2012). Appellant argues that the AFCCA on
remand must consider how the admission of the obscene
cartoons as evidence may have affected the findings of
guilty for the other contested offenses.[9] We agree. Accordingly, in conducting its new review under Article 66,
UCMJ, the AFCCA shall evaluate the impact of this
Court's dismissal of the Charge and its Specification on
both (1) the findings of the Additional Charge and its Specifications and (2) the sentence. If the AFCCA sets aside the
findings and sentence, a rehearing is authorized. If the
AFCCA affirms the findings, it may reassess the sentence
based on the affirmed findings of guilty or order a rehearing on the sentence.

---

[8] We also note that the Court in *Rice* rested its decision
largely on the evident intentions of Congress in enacting Article
134, UCMJ. We express no opinion on whether Congress, by
amending Article 134, UCMJ, could provide for a different result
in future cases.

[9] During the inquiry required by *United States v. Care*, 18
C.M.A. 535, 40 C.M.R. 247 (1969), Appellant agreed that the
stipulation of fact and his guilty plea could be used as evidence
on the findings of the contested offenses (the Additional Charge
and its Specifications). During the findings phase of the second
court-martial, the stipulation of fact and the guilty plea were introduced into evidence in support of the contested offenses. In
addition, trial counsel referred to this evidence in the opening
statement and closing arguments.

### IV. Conclusion

The granted question is answered in the affirmative. The decision of the United States Air Force Court of Criminal Appeals is set aside. The findings as to the Charge and its Specification are set aside and the Charge and its Specification are dismissed with prejudice. The record is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for a new review under Article 66, UCMJ, 10 U.S.C. § 866 (2012), consistent with this opinion.